# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TXI OPERATIONS, LP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:20-CV-00353** |
| | § | |
| CITY OF McKINNEY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| TXI OPERATIONS, LP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:20-CV-609** |
| | § | |
| CITY OF MCKINNEY, TEXAS and the | § | |
| BOARD OF ADJUSTMENT FOR THE | § | |
| CITY OF MCKINNEY, TEXAS | § | |
| | § | |
| *Defendants.* | § | |

## TXI OPERATIONS, LP'S CONSOLIDATED AMENDED COMPLAINT

TXI Operations, LP, d/b/a Martin Marietta Materials, Plaintiff in the above-captioned civil action, files this Consolidated Amended Complaint against Defendants City of McKinney, Texas ("City") and Board of Adjustment for City of McKinney, Texas ("Board"), and alleges as follows:

### 1.

## INTRODUCTION

TXI Operations, LP ("TXI" or "Plaintiff") is one of the state's largest suppliers of construction materials including concrete and crushed aggregate. TXI owns over ten acres within the City's boundaries on which for more than seventeen years it operated its concrete

batching plant pursuant to a site plan and permanent Certificate of Occupancy issued in accordance with a settlement agreement and agreed judgment between TXI and the City. That all changed when the City unilaterally reneged on its promises in the parties' agreement, which were set forth in the agreed judgment, and began taking actions to terminate TXI's operations on the property; specifically, the City attempted to use its enforcement and land use powers to shut down TXI's operations, including falsely claiming that TXI was in violation of various code provisions. When that did not work, the City doubled down and illegally downzoned TXI's property without providing the constitutionally and statutorily required notice. Defendants followed that illegal action by instituting amortization proceedings to force a termination date for TXI's operations, relying on an unqualified expert with bogus opinions and unconstitutional ordinances to prevent TXI from meaningfully participating during those proceedings. Defendants' actions violated TXI's constitutional and property rights, and TXI files this lawsuit to challenge their illegal conduct.

## 2.

## <u>PARTIES</u>

2.1     Plaintiff TXI is a Delaware limited partnership whose sole partners are Delaware Trusts owned by Delaware entities that are ultimately owned by Martin Marietta Materials, Inc., a North Carolina corporation with its principal place of business located at 2710 Wycliff Road, Raleigh, North Carolina. TXI and each entity in its chain of ownership has its principal place of business in Raleigh, North Carolina.

2.2     Defendant City is a municipality and political subdivision duly organized and existing under the laws of the State of Texas and located in Collin County, Texas. The City can be served with process by serving the City Secretary, Empress Drane, at 222 N. Tennessee Street, McKinney, Texas 75069.

2.3     Defendant Board is a duly established board of adjustment created under the laws of the State of Texas.  The Board can be served with process by serving the City Secretary, Empress Drane, at 222 N. Tennessee Street, McKinney, Texas 75069.

**3.**

## **JURISDICTION AND VENUE**

3.1     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), as Plaintiff and Defendant are citizens of different states and the amount in controversy exclusive of interest and costs exceeds $75,000.00; under 28 U.S.C. § 1331, as this action arises under the Constitution, laws, or treaties of the United States; under 28 U.S.C. § 1343(a)(3), in that it is brought "to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States"; under 28 U.S.C. § 1367(a), which provides supplemental jurisdiction over state law claims so related to claims in an action within this Court' s original jurisdiction that they form part of the same case or controversy; under 28 U.S.C. § 2201, to secure declaratory relief; under 28 U.S.C. § 2202 to secure injunctive relief; and under 42 U.S.C. § 1988, to award attorneys' fees.

3.2     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b) because the City is located within the judicial district of this Court and events underlying the causes of action occurred in, and involve land located within, the judicial district of this Court.

3.3     The City does not enjoy immunity with respect to the claims asserted in this Complaint due to the City's violations of Plaintiff's constitutional rights, inverse condemnation/regulatory takings, violations of Plaintiff's civil rights under Title 42 of the United States Code, violations of Plaintiff's contractual rights set forth in a settlement

agreement with the City, and pursuant to Section 211.011 of the Texas Local Government Code.

## 4.

## FACTUAL BACKGROUND

**4.1     The City's Settlement Agreement with TXI.**

4.1.1    TXI owns the real property and concrete plant operation located at 2005 South McDonald Street, McKinney, Texas 75069 (the "Property").  In 2000, TXI's predecessor-in-interest, Marriott Brothers, Inc. ("Marriott"), submitted a site plan application to construct and operate a new concrete ready mix plant on the front portion of the Property. But after the City's Planning and Zoning Commission recommended approval of the site plan application, the City Council refused to vote on the request.

4.1.2    Litigation ensued, as the City filed suit against various parties, including TXI and Marriott, and TXI, Marriott, and others filing counterclaims against the City.  The parties ultimately entered into a negotiated settlement agreement dated July 30, 2001 (the "Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.  As part of the Settlement Agreement, the parties agreed to the entry of a judgment, which the state district court entered on the same day, which memorialized the terms of the Settlement Agreement (the "Agreed Judgment").   A true and correct copy of the Agreed Judgment is attached hereto as **Exhibit B.**

4.1.3    The Agreed Judgment provided the following: (1) the site plan approved in 1996 for the Property provided for temporary uses and allowed no uses after March 2000; (2) under the City's ordinances, the Planning and Zoning Commission is empowered to approve, approve with conditions, or deny a site plan brought forward for its consideration; (3) the Planning and Zoning Commission's action on February 22, 2000 with respect to Marriott's

site plan application in 2000 legally constituted approval of the application with conditions; (4) as Marriott did not seek further consideration by the McKinney City Council, it legally agreed to the conditions imposed and the City Council was without jurisdiction to consider the application; and (5) the details of the site plan approved by the Planning and Zoning Commission are accurately reflected in Exhibit "A" to the Agreed Judgment (the "Approved Site Plan"). Upon completion of the improvements described in the Approved Site Plan, the City was required to issue a permanent Certificate of Occupancy for the Property.

4.1.4   The Approved Site Plan required TXI and Marriott to take considerable actions and expend significant capital in order to obtain its permanent Certificate of Occupancy.  On October 18, 2001, the City issued a permanent Certificate of Occupancy to Marriott certifying that, at the time of issuance, the Property was in compliance with City ordinances regulating building construction and use. The Certificate of Occupancy also signified that TXI and/or Marriott had complied with the terms of the Approved Site Plan detailed in the Settlement Agreement and Agreed Judgment. A true and correct copy of the City's 2001 permanent Certificate of Occupancy for the Property is attached hereto as **Exhibit C.** The Property was developed, and has been in use, in accordance with the Approved Site Plan for nearly two decades, and throughout that time the Property was zoned as a Heavy Manufacturing District.

4.1.5   The City subsequently affirmed the legality of TXI's use of the Property multiple times: in 2012, when it approved an Amending Plat; in 2016, when the City sought and obtained from Plaintiff a Fire Lane and Mutual Access Easement; in 2018, when a Minor Replat was filed; and again in 2018 when the City issued a Certificate of Occupancy certifying that, at the time of issuance, the use and occupancy of a two-story building constructed on the Property was in accordance with the International Building Code. True and correct copies of

the 2012 Amending Plat, the Fire Lane and Mutual Access Easement, the 2018 Minor Replat, and the 2018 Certificate of Occupancy are attached hereto as **Exhibits D, E, F,** and **G,** respectively. Pursuant to Chapter 245 of the Texas Local Government Code, these documents constitute additional permits for TXI's project.

**4.2**     **City's Misuse of Enforcement Power to Deprive TXI of its Rightful Property Use.**

4.2.1    In 2018, TXI sought to improve the existing physical plant on the Property and move it further away from nearby residential areas. TXI prepared plans that would have resulted in it spending approximately $5,500,000 to construct a new, more efficient and more environmentally friendly plant at a location further from residential areas, and began discussing those plans with McKinney officials.

4.2.2    The area of the Property to which TXI desired to relocate the plant was zoned for light manufacturing, which did not permit a concrete plant, as opposed to Heavy Manufacturing like the portion of the Property where the plant was currently located.  Initially TXI sought a rezoning to make the entire Property a consistent zoning classification.

4.2.3    Despite initially positive feedback from the City's Planning Department, on April 23, 2018, the City notified TXI that the Property was not in compliance with the Approved Site Plan, and, therefore, with the Agreed Final Judgment. A true and correct copy of that letter is attached hereto as **Exhibit H.** The City's position was both puzzling and irrational because TXI and Marriott had used the Property in the same manner for more than fifteen years in accordance with the Settlement Agreement, the Agreed Judgment, and Approved Site Plan without objection from the City.

4.2.4    City officials next claimed that TXI did not have an approved site plan for its operations. In a letter dated June 19, 2018, the City ordered TXI to provide a "site plan showing compliance with the requirements of the zoning ordinance" the very next day, June

20, 2018. The City further "ordered" TXI to obtain approval for it by July 20, 2018. A true and correct copy of the June 19, 2018 letter is attached as **Exhibit I**. That was a puzzling, irrational, and unlawful demand because the City had already approved TXI's site plan pursuant to the parties' Settlement Agreement, under which TXI had operated for almost twenty years.

4.2.5   On July 20, 2018, the City sent a letter threatening to "begin enhanced enforcement" of noise regulations against TXI on August 1, 2018. A true and correct copy of the City's July 20, 2018 correspondence to TXI is attached hereto as **Exhibit J.** The letter claimed that TXI might already be violating the noise ordinance, but recited no basis for that claim or the threat of "enhanced enforcement." That same day, the City also sent its Fire Department to inspect the Property and issue TXI a notice of violation, a true and correct copy of which is attached hereto as **Exhibit K.**

4.2.6   Subsequently, TXI learned that the City's July 20, 2018 letter was based on nothing more than an unsubstantiated claim by some residents that TXI was in violation of the noise ordinance. The day before the City sent its letter, counsel for the residents of High Point Mobile Home Park ("RHP") sent a letter to the City claiming, without any substantiation, that TXI was violating the City noise ordinance. A true and correct copy of that letter is attached as **Exhibit L.**   Apparently the threat of "enhanced enforcement" dovetailed nicely with the City's bogus claim that TXI did not have an approved site plan. The City then fired off its July 20, 2018 letter the day after it received the RHP letter, without disclosing RHP's complaints to TXI or giving it an opportunity to respond.

4.2.7   Notices from the City of alleged noise violations, each with no factual basis, followed in short order beginning in August 2018, when Code Enforcement Officer Raymond

Durrett ("Officer Durrett") issued TXI a notice of violation of Section 70-120(b)(7) of the noise ordinance and gave TXI until September 31, 2018 to comply with the Code.

4.2.8   The harassment continued into Fall 2018, when Officer Durrett issued Citation Nos. 18-CD160 and 18-CD164, respectively, to TXI for violations of Section 70-120(a)—titled "Specific Noise Disturbance Prohibited"—a different code section than the one cited in the prior month's notice of violation. The City went so far as to file complaints and citations in Municipal Court, which TXI was forced to resolve. True and correct copies of the October 8, 2018 and November 13, 2018 complaints and citations are attached hereto as **Exhibits M** and **N,** respectively.

4.2.9   Notably, the citations the City issued were for "Disorderly Conduct-Loud Noise" and were based on a claim that TXI had operated equipment during certain hours that "was offensive to the sensibilities of a reasonable, prudent adult person," such that it rendered the "enjoyment of life or property uncomfortable."  Code § 70-120(a). The City knew or should have known that the Code section under which it was proceeding was unconstitutional under the Texas Constitution and unenforceable under Chapter 245 of the Texas Local Government Code. In fact, the City's own staff subsequently determined there was no basis for claiming that noise from the TXI facility violated the Code, as described below. But the City saw the use of its unconstitutional noise ordinance as an effective way to harass TXI, hoping TXI would give up and close its business on the Property.

**4.3     The City's Illegal Downzoning of the Property.**

4.3.1   By late 2018 or early 2019, the City had apparently decided that pure harassment through citations was not working quickly enough and decided to downzone the Property illegally. On or about February 13, 2019, Mark E. Goldstucker, an attorney for the City, sent TXI a letter stating that "City staff has determined that rezoning the Property" to a

new classification that would make TXI's use of the Property "nonconforming" was "appropriate." The letter then offered to let TXI continue to operate the site only until June 1, 2020, even though TXI had a clear legal right to continue operating the site as a lawful nonconforming use even after downzoning (setting aside TXI's contractual right pursuant to the Settlement Agreement). A true and correct copy of Mr. Goldstucker's February 13, 2019 letter is attached hereto as **Exhibit O.**

4.3.2   The February 13, 2019 letter threatened that if TXI did not accept the City's terms by February 22, 2019, the City would begin "normal enforcement of City regulations"—a threat of selective enforcement plainly intended to deprive TXI of its constitutionally and statutorily based rights. In fact, the City could not have legally rezoned the Property by February 22, 2019, so the demand that TXI respond to it by that date was an attempt by the City to leverage its enforcement powers to deprive TXI of its property rights without any actual rezoning.

4.3.3   On March 1, 2019, counsel for TXI responded to Mr. Goldstucker's February 13, 2019 letter and advised the City that its demands were unlawful and contrary to TXI's rights under statutory and constitutional law. Specifically, TXI advised the City that its threatened downzoning was arbitrary and being used by the City unlawfully to interfere with TXI's lawful operations on the Property. A true and correct copy of the correspondence is attached hereto as **Exhibit P.**

4.3.4   The City responded by making good on its downzoning threat and initiating proceedings to rezone the Property.  The City thus initiated proceedings to downzone the Property from a Heavy Manufacturing District to a Regional Office District.  In order to lawfully downzone the Property, the City had to provide TXI written notice of each public

hearing before the zoning commission on any proposed zoning change. *See* TEX. LOC. GOV'T CODE ANN. § 211.007(c). The City failed to provide TXI with that requisite notice.[1] Because the City failed to provide the required notice, TXI's representatives did not attend either public hearing.

4.3.5   On April 16, 2019, again without providing the notice required by Section 211.007 of the Texas Local Government Code, the City Council downzoned the Property to a regional office district. It did so knowing that the downzoning would make the Property useless to TXI and would prevent any concrete batch plant operations.

4.3.6   In the same meeting at which it downzoned TXI's Property, the City Council also adopted revisions to the noise performance standards in Section 146-134 of the Code intended specifically to target TXI's use of the Property. Although that administrative action masquerading as legislation was aimed specifically at TXI, TXI was not given prior notice of the City's proposed change to the noise performance standards. The revised ordinance states that"[a]t no point at the bounding property line of a residential use shall the sound pressure level of any operation or activity exceed 65 dB(A) for daytime hours and 58 dB(A) at nighttime." *See* Code § 146-134. To be sure that the revised ordinance only applied to those disfavored businesses the City wanted to hurt, the City exempted civic events, outdoor amphitheaters, sporting stadiums, and other types of events that "add to the character and quality of life of the community" from the aforementioned decibel limitations. *See* PZ Staff Report for City of McKinney, Texas, at 2, a true and correct copy of which is attached as **Exhibit Q.**

---

[1] Upon information and belief, the City also failed to provide the property owners adjacent to the Property with the required statutory notice.

4.3.7 Upon information and belief, the City enacted Section 146-134 specifically to set a different noise standard it could then enforce on the TXI Property. As applied, the decibel limitations furthered the City's scheme to force TXI to shut down its lawful business and leave the City.

## 4.4 The City's Illegal and Unconstitutional Amortization of the Property.

4.4.1 On or about May 23, 2019, Mr. Goldstucker sent TXI a letter incorrectly stating that TXI had failed to respond to his February 22, 2019 correspondence. A true and correct copy of the May 23, 2019 letter is attached hereto as **Exhibit R**. Knowing the City failed to follow the requisite state law as to zoning notice, Mr. Goldstucker tried (but failed) to equate his prior letter to legal notice of the downzoning under Section 211.007(c) of the Texas Local Government Code. Mr. Goldstucker renewed the City's demand that TXI cease operations on the site in a little more than a year, and threatened that if it did not do so "the City will move forward with addressing Martin Marietta's nonconforming use without input from Martin Marietta." Ex. S at 2.

4.4.2 Of course, TXI's use of the Property was a lawful use for a number of reasons, including the parties' Settlement Agreement and Agreed Judgment, the Certificate of Occupancy, and the fact that the City had failed to follow the notice requirements of Texas law for the rezoning, meaning that the purported downzoning was null and void. Even if the City had legally rezoned TXI's Property, the use of it would have still been a lawful nonconforming use. In sum, there was no basis for the City to demand that TXI cease its use of the Property.

4.4.3 Undeterred, and again without providing TXI with the required notice, the City scheduled a public hearing before the Board on February 11, 2020 to consider initiating the

process to terminate TXI's use of its Property as a lawful nonconforming use. The City subsequently moved the hearing to February 26, 2020, once again without proper notice to TXI. Because the City failed to notify TXI of the hearings, TXI was not represented at either hearing. The Board voted at the February 26, 2020 hearing to initiate the amortization process to terminate TXI's lawful use of the Property. A true and correct copy of a City staff communication providing alleged reasons for terminating TXI's use is attached hereto as **Exhibit S.**

4.4.4   At its February 26, 2020 Board hearing, it was presented with incomplete and misleading information to justify the City's effort to terminate TXI's property rights. For example, the Board was told that TXI's use was a noise nuisance. Tellingly, however, the City's own noise study presented to the Board concludes "there is no evidence to substantiate complaints that noise from the Facility violates the Code." A true and correct copy of that noise study is attached hereto as **Exhibit T.**

4.4.5   Indeed, the City's study showed that less than 1% of the noise events it measured were potentially attributable to TXI's facility. Ex. U at 11-12.  Most of the noise, the study made clear, was a product of traffic on Highway 5, which five years ago handled 41,000 vehicles per day according to the study.

4.4.6   Nevertheless, on or about March 4, 2020, TXI's counsel received a Subpoena Duces Tecum (the "Subpoena") from the City Attorney for the purported purpose of amortizing and terminating TXI's use of the Property. A true and correct copy of the Subpoena is attached hereto as **Exhibit U.** The Subpoena purported to require TXI to produce internal financial documents that constitute trade secrets or private confidential financial information.

4.4.7    TXI did not respond to the Subpoena for a host of reasons, including that it was invalid due to the City's failure to provide statutory notice of rezoning, which rendered all its actions thereafter null and void.  Yet, the City decided to move forward with amortization.

4.4.8    The Board scheduled a public hearing on July 29, 2020 with an agenda to "Consider/Discuss/Act on Determining an Amortization Period and Establishing a Compliance Date for the Nonconforming Concrete Batch Plant Use" on the Property.  On or about July 23, 2020, the City published on its website and provided to TXI an expert report titled, "Amortization Study of Martin Marietta Ready-Mix Batch Plant Located at 2005 South McDonald Street, McKinney, Texas 75069 as of June 30, 2020" (the "Amortization Report"). A true and correct copy of the Amortization Report is attached hereto as **Exhibit V**.

4.4.9    The City provided the Amortization Report to TXI merely days before the hearing despite it having been finalized on July 10, 2020.  Moreover, the City never disclosed to TXI that it had hired an expert despite having done so on March 17, 2020, many months before the amortization hearing.   Neither the City nor the expert ever asked to visit the Property or inspect TXI's plant in connection with preparing the Amortization Report.

4.4.10   The City's expert who authored the Amortization Report has no experience, training, or other qualifications to assess concrete batching plants. As a result, the City's expert was wholly unqualified to issue any opinions with respect to TXI's concrete batching plant on the Property. Nonetheless, he opined on numerous industry-specific valuations and calculations. For example, the City's expert opined on the cost of setting up a new concrete batching plant, taking down and relocating a concrete batching plant, TXI's assets used in operating its plant, and TXI's annual sales and profit margins. The expert apparently relied on various internet sources in drafting his report. Unsurprisingly, the Amortization Report was permeated with flawed and erroneous

assumptions, which further exposed the City's expert's unfamiliarity with concrete batching plants and the concrete batching industry. Ignoring those fundamental flaws, City staff relied on the Amortization Report and recommended that the Board adopt an April 29, 2021 compliance date for TXI to cease operations on the Property.

4.4.11 Given the City's apparent determination to rely on a flawed process and use a fundamentally flawed report to take its property, TXI decided to attend the Board's July 29, 2020 public hearing to inform the Board of the problems with the process it was following, the unfairness of the process, and the flaws in Amortization Report. TXI believed that, once informed of the laws and unfairness in the process, the Board would defer any action, either to consider the legality of its process or to permit TXI time to hire its own expert and prepare a response to the Amortization Report. Instead, TXI's representatives attended the hearing only to be informed by City staff and the Defendants' attorney that not only would TXI be given no time to prepare a response to the Amortization Report, it would not even be allowed to participate in the hearing.

4.4.12 Specifically, Defendants' attorney, Mark Goldstucker, informed TXI shortly before the hearing that TXI had waived its rights to participate in the Board's amortization hearing because it had not responded to the Board's subpoena. The City's position was based on Section 146-40(g)(3)(d) of the City's Code of Ordinances:

> Failure or refusal by owner to provide any requested documents or to provide reasonable accommodation to perform a physical inspection shall not prevent the board of adjustment from setting a compliance date. In addition, owner's failure or refusal to provide any requested documents or to provide reasonable accommodation to perform a physical inspection shall constitute the owner's waiver of any and all rights to challenge the qualifications of any witness providing testimony, opinions or evidence of any kind or nature to the board submitted to the board for its consideration in establishing a compliance date. Owner's failure or refusal to provide any requested documents or to provide reasonable accommodation to perform a physical inspection shall also result in the owner's waiver

of any and all rights to challenge any evidence, information, testimony, theories, conclusions, analysis, opinions and results submitted to the board for its consideration in establishing a compliance date.

4.4.13 The McKinney ordinance is sweepingly unconstitutional. It purports to grant the Board, acting as prosecutor and judge, the right to demand the production of "any" document, or any "accommodation" the Board deems reasonable and then deny a property owner its due process rights on failure to "provide any requested documents" or to provide any accommodation the Board deems reasonable, all without any hearing whatsoever. Further, the Board compounded its denial of due process by relying on the statute in deciding that TXI could not even participate in the hearing as the affected property owner.

4.4.14 Instead, the Board merely allowed TXI to speak at the July 29 hearing for three minutes, which is the same amount of time given to any member of the public who wishes to attend and address the Board. TXI's representative informed the Board that its actions were illegal due to the City's failure to provide TXI notice of the Property's downzoning and that TXI wished to examine the City's expert, but had been denied that opportunity according to the City's attorney. TXI's three minutes expired before its representative had finished presenting the Board with TXI's position, and respectfully asked for more time to finish his statements, given that he was there on behalf of the aggrieved property owner. The Board denied the request and refused to let TXI continue with any statements.

4.4.15 The City's expert did not speak during the hearing nor did the Board ask any questions about the flawed Amortization Report. In fact, the Board did not hear any specific evidence at the hearing, other than a few generic statements from City staff recommending an April 29, 2021 compliance date. Alarmingly, City staff made several material misrepresentations to the Board, including Jennifer Arnold, the City's Director of Planning, who informed the Board

that TXI was not currently operating its plant on the Property and had not operated it in more than a year. That is patently untrue, as TXI was in fact operating its plant at the time of the hearing on July 29, 2020.

4.4.16 Michael Quint, the City's Executive Director of Development Services, also admitted to the Board that it was disputed as to whether the City provided TXI with statutory notice of rezoning. The Board did not ask any follow up questions to Mr. Quint about the specific details regarding any notice the City provided TXI.

4.4.17 None of that, however, stood in the way of the Board doing what it was determined to do. Not the lack of a hearing, not TXI's plea to be allowed more time to address the Board, and not TXI's request to participate in the hearing. None of that made any difference, as the Board duly voted in favor of amortizing TXI's use on the Property and adopted the City's recommended April 29, 2021 compliance date. Attached hereto as **Exhibit W** is a true and correct copy of the Board's order. TXI filed suit against the City and the Board in Civil Action Number 4:20-cv-609 9 pursuant to Section 211.011 within ten days after the date the decision was filed in the Board's office.

**4.5     City's Deprivation of TXI's Use of Its New Backup Property.**

4.5.1    The City's improper interference and apparent willingness to undertake illegal actions to prevent TXI's use of the Property made it concerned about its ability to carry on its ongoing business on the Property. Because TXI needed to ensure that a backup concrete batch plant was available to serve local and regional markets in the event its existing plant was shut down as the City had threatened, in January of 2021, TXI purchased a new parcel of land in Collin County to build a new batch plant. That real estate is located at 1825 F.M. Highway 546, which

is located outside the City's legal limits and outside its zoning jurisdiction, but within the City's extraterritorial jurisdiction (the "New Property").

4.5.2    The New Property is purportedly subject to a non-annexation development agreement between the City and the late Mabel Lois Rutledge, the prior owner of the New Property, attached as **Exhibit X** (the "Development Agreement").  The Development Agreement was signed in 2016 when involuntary annexations were legal under state law.  The City approached Ms. Rutledge, who at the time was a nonagenarian widow residing at the home she originally purchased in 1956 with her late husband Eulan Rutledge, and threatened to annex the New Property unless she signed the Development Agreement.  In so doing, the City forced Ms. Rutledge to waive her right to develop the New Property, subject herself to City regulations, and agree to various one-sided terms and conditions, including a provision that characterizes the Development Agreement as a petition for "voluntary" annexation.  In essence, the City threatened Ms. Rutledge with involuntary annexation unless she agreed to give up some of her rights to use her property as she had for 60 years.  The very next year Ms. Rutledge passed away and the Texas legislature reversed over a century of law by passing a new statute prohibiting involuntary annexations like the one the City threatened Ms. Rutledge with the year before. There are multiple problems with what the City did to Ms. Rutledge and with the Development Agreement itself.

4.5.3    First, the Development Agreement does not comply with Section 212.172(c)(3) of Texas Local Government Code, which requires that development agreements "be approved by the governing body of the municipality".  Here, the Development Agreement was not approved by the City Council and was instead signed by an interim City manager who lacked the requisite authority to effectuate such an agreement in accordance with state law.  Accordingly, the Development Agreement is unenforceable, null, and void.

4.5.4    Second, the Development Agreement does not comply with Section 212.172(c)(2) of Texas Local Government Code, which requires that development agreements "contain an adequate legal description of the land" subject to an agreement.   Here, the legal description attached to the Development Agreement is inadequate and incorrect because it is for a *40*-acre parcel of land, even though the Development Agreement plainly states that the New Property was, and in fact is, only *39* acres in size.   Accordingly, the Development Agreement is unenforceable, null, and void.

4.5.5 Third, upon information and belief, the City contends that the Development Agreement prohibits TXI, as successor to Ms. Rutledge, from developing a concrete batch plant on the New Property.   Specifically, upon information and belief, the City contends that Ms. Rutledge waived her right to develop the New Property.   But to the extent the Development Agreement limited Ms. Rutledge's ability to develop the New Property, any such limitation should be or has already been discharged because Ms. Rutledge's purpose for entering into the Development Agreement has been frustrated.   Indeed, Ms. Rutledge "object[ed] to the involuntary annexation by the City" (Development Agreement Recitals) and only signed the Development Agreement in order to avoid having her home of 60 years involuntarily annexed.   Critical to Ms. Rutledge's decision to sign the Development Agreement in 2016 was the reality that the City could have involuntarily annexed the New Property.   But that is no longer the case because, in 2017, the Texas State Legislature signed S.B. 6 (later expanded in 2019 by H.B. 347) into law, which, among other things, prohibited municipalities from involuntarily annexing property, subject to several limited exceptions.   Because those exceptions do not apply to the New Property, the City no longer has any statutory basis to annex the New Property.   Accordingly, the Development Agreement and any limitation or obligation of TXI arising thereunder, including any limitation of TXI's ability to

develop the New Property, should be or has already been discharged under the doctrine of frustration of purpose.

4.5.6 Fourth, the Development Agreement includes unreasonable, egregious terms and conditions that exceed and in fact violate the statutory provisions that govern the required and allowable terms and conditions of development agreements.  In particular, the City's inclusion of a provision that allows it to bypass the annexation processes entirely lacks any statutory or legal basis and results in its breach of Section 43.016 of the Texas Local Government Code. Section 43.016 is a property-owner protection statute that requires cities to offer certain landowners a development agreement before involuntarily annexing their property.  The statute specifies mandatory terms of the development agreement and states that if a landowner later violates the agreement by filing a development application then the remedy for the city is that any annexation restriction in the agreement is then void.  Without this statutorily prescribed remedy cities could include a variety of draconian remedies such as an excessive monetary penalty, or, as is the case here, pre-approval of what is a now an illegal annexation.

4.5.7 Yet that is exactly what the City did here when it forced Ms. Rutledge to characterize the Development Agreement as a petition for "voluntary" annexation, waive applicable timing and notice requirements, waive "any and all vested rights and claims", and stipulate that consent for the voluntary annexation pursuant thereto was "conclusively presumed" to have been "duly tendered". (Development Agreement Sections 5-7.)  The remedies in the Development Agreement go well beyond voiding the Development Agreement's restrictions on annexation and as such the additional remedies are not permitted under Section 43.016, frustrate its purpose, and are void and unenforceable.  Indeed, abusive and aggressive tactics like these that deprive landowners of the

ability to exercise their property rights are some of the reasons the Legislature originally passed 43.016 in the first place.

 4.5.8 TXI rejects and terminates the Development Agreement.

**5.**

**<u>CLAIMS FOR RELIEF</u>**

**5.1 First Cause of Action: Breach of Contract.**

 5.1.1 Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

 5.1.2 TXI and the City entered into a settlement agreement in 2001. That contract was a valid and subsisting agreement with no expiration date. The parties had a meeting of the minds, exchanged consideration, and reached an agreement on all material terms. Notably, the parties anticipated a permanent resolution of their dispute. The contract has never been amended, rescinded, or terminated. TXI has at all times fully performed its contractual obligations under the Settlement Agreement, including by complying with the Agreed Site Plan and remaining in compliance for nearly twenty years.

 5.1.3 The City breached the Settlement Agreement through its various actions, including asserting that TXI did not have a site plan for the Property, downzoning the Property, and amortizing the Property.

 5.1.4 The City's breach of the Settlement Agreement has proximately caused damage to TXI; for example, TXI will lose all revenue and profits from the Property's batch plant and will be forced to incur significant costs in relocating from the Property.

 5.1.5 TXI is also entitled to recover its costs and reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

**5.2    Second Cause of Action: Denial of Substantive and Procedural Due Process and Due Course.**

5.2.1    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.2.2    Defendant's actions described herein lack a reasonable basis, are substantively and procedurally illegal, and are arbitrary and capricious. They are unauthorized, null and void.

5.2.3    For the reasons set forth herein, Defendant has deprived Plaintiff of its due process and due course protections under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution. As alleged in the preceding paragraphs, Defendant has used its position as a regulator to deprive TXI of its property rights arbitrarily and capriciously. Among other things, the City has done so by making unfounded claims of TXI not having an approved site plan, threatening and engaging in unequal enforcement of ordinances, claiming noise violations without a factual basis and based on an ordinance the City knew was unenforceable, downzoning Plaintiff's Property without giving the notice Texas law requires, conducting amortization proceedings involving Board issued illegal and invalid subpoenas, holding hearings where TXI was forbidden from participating in a meaningful way, and ordering that TXI cease its plant operations on the Property by April 29, 2021.

5.2.4    Plaintiff seeks its actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendant's violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**5.3    Third Cause of Action: Denial of Equal Protection**

5.3.1    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.3.2   For the reasons set forth herein, Defendant has discriminated against and targeted Plaintiff for no rational or legal purpose and denied Plaintiff the equal protection of law. As a public entity, the City is prohibited from unlawfully discriminating against its property owners. The only tracts where the City is imposing noise standards on existing industrial facilities are the Property and the two adjacent tracts. The only industrial facilities the City has attempted to terminate by amortization are the Property and an adjacent tract. The only properties that the City has downzoned in order to terminate an industrial use are the Property and the two adjacent tracts. The only properties the City has targeted for acquisition in order to shut down operating businesses are the Property and the two adjacent tracts. Defendant has arbitrarily targeted Plaintiff in an effort to force it out of the City and to purchase the Property at a cheap price. Defendant's actions lack a rational basis, are arbitrary and capricious, and violate the Equal Protection Clause, such Equal Protection being guaranteed to Plaintiff by Article 1, Section 3 of the Texas Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

5.3.3   Plaintiff seeks its actual damages pursuant to 42 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendant's violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**5.4      Fourth Cause of Action: Inverse Condemnation/Regulatory Takings.**

5.4.1   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.4.2   Defendant's intentional actions have deprived Plaintiff of its economically viable use of the Property without just compensation and have diminished the value of the Property, and, thereby, constitute a regulatory taking under both the Texas and United States Constitutions. Among other acts, Defendant's unconstitutionally vague noise restrictions and downzoning have unreasonably interfered with Plaintiff s use and enjoyment of the Property

and deprived Plaintiff of its reasonable investment-backed expectations. The City has taken these various adverse actions with acquisitory intent. Plaintiff is entitled to recover either permanent damages for this taking , or temporary damages until the date the Court rules that Plaintiff's Property is considered legally conforming , and TXI is allowed to continue its historical use of the Property.

5.4.3   Plaintiff further seeks its actual damages pursuant to 42 U.S.C. § 1983 and the Texas Constitution and attorneys' fees pursuant to 42 U.S.C. § 1988(b) based on Defendant's violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**5.5     Fifth Cause of Action: Chapter 245 Rights.**

5.5.1   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.5.2   Pursuant to Tex. Loc. Gov't Code § 245.002, the Court should declare that Defendant's ordinances, rules, and regulations enacted after the Agreed Judgment and/or the 2001 Certificate of Occupancy cannot legally be applied to Plaintiff's Property without TXI's consent. The City is prohibited under Chapter 245 from terminating Plaintiff's project. In addition, the City is prohibited from enforcing noise restrictions and other ordinances enacted after 2001 to TXI's project.

5.5.3   Plaintiff further seeks its reasonable and necessary attorneys' fees pursuant to Tex. Loc. Gov't Code § 245.006(c).

**5.6     Sixth Cause of Action: Declaratory Relief under Federal Declaratory Judgment Act.**

5.6.1   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.6.2   An actual existing and bona fide controversy exists between TXI and Defendants concerning Defendants' rezoning and amortization of the Property.  TXI alleges that Defendants' actions in rezoning and amortizing the Property were illegal, null, and void

due to the City's failure to provide statutory notice to TXI as Texas law requires. TXI further alleges that the Board's subpoena issued to TXI during amortization proceedings was illegal and had no effect. TXI also alleges that Section 146-40(g)(3)(d) of the City's Code of Ordinances is unconstitutional, as it violates a property owner's due process rights.

5.6.3 Because of the real and justiciable controversies stemming from Defendants' actions, as well as the harm caused to TXI as a result of Defendants' actions, TXI seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that: (1) the City did not provide notice to TXI as required under Texas law, including Section 211.007(c) of the Texas Local Government Code, (2) the City's rezoning of the Property was null and void, (3) the Property continues to be zoned as a Heavy Manufacturing District, (4) TXI's operation of a concrete batch plant on the Property is a conforming use, (5) the Board's amortization proceedings were null and void, including the Board's order requiring a compliance date of April 29, 2021, (6) Section 146-40(g)(3)(d) of the City's Code of Ordinances is unconstitutional, (7) the City has violated the Agreed Judgment, (8) TXI is in compliance with the Approved Site Plan and the Agreed Judgment, (9) the City's noise ordinances are unconstitutionally vague and too ambiguous to be fairly enforced and are therefore null and void, (10) the City's noise ordinances are preempted by the Texas Constitution and are therefore null and void, (11) the City's ordinances enacted after entering the Agreed Judgment cannot be applied to TXI's use of the Property, and (12) the Development Agreement on the New Property is unenforceable, null, and void.

**5.7    Seventh Cause of Action: Unconstitutional Retroactive Law.**

5.7.1 Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.7.2 Amortization and termination of an existing legally permitted use is retroactive legislation. Article 1, § 16 of the Texas Constitution prohibits retroactive legislation and

requires consideration of the following elements: (1) the nature and strength of the public interest served by the law as evidenced by the government's factual findings, (2) the nature of the prior right impaired by the statute, and (3) the extent of the impairment. *See Robinson v. Crown Cork & Seal, Co.,* 335 S.W.3d 126, 145 (Tex. 2010). As shown by the facts set forth in this Complaint, the City cannot meet its burden on these three elements . Retroactive legislation under these facts also violates the takings and due process clauses of the U.S. Constitution. *E. Enters. v. Apfel ,* 524 U.S. 498, 533-34 (1998).

**5.8     Eight Cause of Action: Permanent Injunctive Relief.**

5.8.1    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.8.2    This Court should issue a permanent injunction enjoining Defendant, all officers, agents, and employees of Defendant, and all persons or entities acting in concert with Defendant, from preventing or impeding Plaintiff's use of the Property in its historical manner, from issuing citations to Plaintiff for noncompliance with City's noise ordinances as described herein, from requiring TXI to comply with the Subpoena or otherwise from proceeding to terminate TXI's use by amortization, and from applying its ordinances enacted after the Agreed Judgment to Plaintiff pursuant to Chapter 245, Tex. Loc. Gov't Code.

5.8.3    A plaintiff seeking a permanent injunction must establish: (1) actual success on the merits; (2) no adequate remedy at law; (3) irreparable harm in the absence of relief; (4) the balance of hardships; and (5) that an injunction is in the public interest. *See Winter v. NRDC, Inc.,* 555 U.S. 7, 32 (2008).

5.8.4    Plaintiff will succeed on the merits of its claims at trial. Defendant has violated Plaintiff's constitutional and statutory rights as described herein and lacks authority to amortize TXI's use following an illegal downzoning.

5.8.5   Defendant's actions have caused Plaintiff injury and will cause Plaintiff irreparable injury if the City is permitted to continue its harassing and illegal conduct to the point that Plaintiff is forced to vacate the Property with no place to move its operations. Remedies available at law such as monetary damages will be inadequate to compensate Plaintiff because, unless permanently enjoined as requested, Defendant will continue to harass Plaintiff in an attempt to cause Plaintiff to vacate the Property with nowhere to go.

5.8.6   The factual background plainly demonstrates that the injury that Plaintiff faces outweighs the injury that would be sustained by Defendant as a result of the injunctive relief. Further, the factual background plainly demonstrates that Defendant is not properly seeking to protect the health and safety of its citizens. The City has even produced a report confirming that TXI's operation does not constitute a noise nuisance.

5.8.7   An injunction prohibiting Defendant from continuing its wholly unreasonable and unlawful conduct would not be adverse to the public interest. Rather, such an injunction would be consistent with state and federal law and would allow the use of the Property to continue in its historical manner.

**5.9     Ninth Cause of Action: Void Development Agreement.**

5.9.1   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.9.2   The Development Agreement is unenforceable, null, and void for the reasons set forth herein, including because it does not comply with Sections 43.016 and 212.172 of the Texas Local Government Code and under the frustration of purpose doctrine.

**5.10    Request for Writ of Certiorari.**

5.10.1  Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.10.2  The Board's decision to approve an amortization period and establish a compliance date for TXI's plant on the Property was illegal.  Pursuant to Section 211.011 of

the Texas Local Government Code, TXI seeks to appeal the Board's decision establishing an April 29, 2021 compliance date for TXI's operations on the Property.

5.10.3 Specifically, the City's downzoning of the Property was null and void because it did not provide TXI with statutorily required notice, among other things. Accordingly, TXI's operation of a concrete batching plant on the Property was not a non-conforming use, as the Property is still zoned a Heavy Manufacturing District. The Board, therefore, did not have authority to amortize TXI's use on the Property or establish a compliance date. Further, the Board's enforcement of an unconstitutional City ordinance prevented TXI from participating at the July 29 amortization hearing where the Board deprived TXI of its property interest violated TXI's due process rights and was therefore illegal.

5.10.4 The Court should issue a writ of certiorari and such writ should be served upon the Board pursuant to Texas Local Government Code § 211.011. All conditions precedent to granting the writ have occurred.

5.10.5 After the Board's return of the writ and a hearing as set forth in Texas Local Government Code § 211.011, TXI seeks a Court order finding that the Board's actions were illegal, and, therefore, null and void, and reversing and vacating the Board's order in its entirety.

**5.11    Ninth Cause of Action: Attorneys' Fees.**

5.11.1    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

5.11.2    Under the authority of 42 USC § 1988, Plaintiff claims reasonable attorneys' fees, both in the trial of this cause and in connection with any subsequent appeal.

5.11.3    Under the authority of Tex. Loc. Gov't Code § 245.006(b), Plaintiff claims reasonable and necessary attorneys' fees.

6.

## JURY TRIAL

6.1   Plaintiff hereby demands a jury trial.

## 7.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests as follows:

a.   That the Court permanently enjoin the City, all officers, agents, and employees of City, and all persons or entities acting in concert with City, from preventing or impeding Plaintiff's use of the Property in its historical manner and pursuant to the Settlement Agreement and Agreed Judgment, from issuing citations to Plaintiff for noncompliance with City's noise ordinances as described herein, from requiring TXI to comply with the Subpoena or otherwise proceeding to terminate TXI's use by amortization, and from applying its ordinances enacted after the Agreed Judgment to Plaintiff;

b.   That the Court find the City has breached the Settlement Agreement;

c.   That the Court find the City's actions have deprived Plaintiff of its due process and due course protections under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution;

d.   That the Court find the City's actions have denied Plaintiff the equal protection of law;

e.   That the Court find the City's actions have deprived Plaintiff of its economically viable use of the Property without just compensation and have diminished the value of the Property, and constitutes a regulatory taking under both the Texas and United States Constitutions;

f.      That the Court declare the City's ordinances, rules, and regulations enacted after the Agreed Judgment and/or the 2001 Certificate of Occupancy cannot legally be applied to Plaintiff's Property without its consent and the City is prohibited under Section 245.002 of the Tex. Loc. Gov't Code from terminating Plaintiff's project;

g.      That the Court find the City's amortization and termination of an existing legally permitted use is retroactive legislation in violation of Article 1, § 16 of the Texas Constitution;

h.      That the Court find the Board's actions were illegal, and, therefore, null and void, and reverse and vacate its order affecting the Property;

i.      That the Court find the Development Agreement is unenforceable, null, and void;

j.      That the Court make the declarations requested herein;

k.      That the Court award actual damages, cost of suit, attorneys' fees and prejudgment and post-judgment interest to the fullest extent provided by law; and

l.      That the Court award such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

JACKSON WALKER LLP

*/s/ Brian H. Oates*
Mark T. Josephs
Texas State Bar No. 11031400
mjosephs@jw.com
Brian H. Oates
Texas State Bar No. 24088144
boates@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Phone
(214) 953-5822 – Fax

David Folsom
Texas State Bar No. 7210800
dfolsom@jw.com
6002 Summerfield Drive, Suite B
Texarkana, Texas 75503
(903) 255-3251 – Phone
(903) 255-3266 – Fax

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2021, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties vial the Court's ECF system.

*/s/ Brian H. Oates*
Brian H. Oates