**EXHIBIT
A**

## SETTLEMENT AGREEMENT

This Agreement (the "Agreement"), made this 30th day of July 2001, is entered into between City of McKinney, Texas (the "City") and J. R. Marriott, B.O. Marriott, Marriott Brothers, Inc. (hereinafter collectively referred to as "Marriott Brothers"), Chemical Lime, Ltd. ("Chemical Lime"), Martin Marietta Materials Southwest, Ltd. ("Martin Marietta"), and TXI Operations, L.P. ("TXI").

WHEREAS, the City filed a lawsuit which is now pending in the 219th Judicial District Court for Collin County, Texas styled *City of McKinney, Texas vs. J. R. Marriott, B.O. Marriott, Marriott Brothers, Inc., Chemical Lime, Ltd., Martin Marietta Materials Southwest, Ltd. , and TXI Operations, L.P.*; Cause No. 219-1124-00 ("Primary Litigation"); and

WHEREAS, J. R. Marriott and B.O. Marriott are the owners and lessors of a certain 40.53 acre tract of land (the "Marriott Property") located on State Highway 5 (2105 South McDonald Street) in McKinney, Texas.

WHEREAS, J. R. and B.O. Marriott do business through their corporate identity, Marriott Brothers, Inc.; and

WHEREAS, Chemical Lime, Martin Marietta and TXI are lessees or sublessees of certain portions of the Marriott Property; and

WHEREAS, the City claims that all Defendants are violating the McKinney Charter and various McKinney ordinances by maintaining and using approximately 10.5 acres of the Marriott Property in a manner inconsistent with an approved site plan; and

WHEREAS, all Defendants have appeared and answered to the City's claims and have expressly denied the claims made by the City; and

CITY 000654

WHEREAS, Defendant Marriott Brothers has filed a counterclaim against the City asserting causes of action for injunction, writ of mandamus, declaratory judgment, due process violations under Article I, Section 19 of the Texas Constitution and the Fourteenth Amendment to the U.S. Constitution, inverse condemnation, equal protection violations under Article I, Section 3 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution, and violations of 42 U.S.C. § 1983; and

WHEREAS, Defendant TXI has filed a counterclaim against the City asserting causes of action for declaratory judgment and costs and attorney's fees pursuant to the Texas Declaratory Judgments Act; and

WHEREAS, at a hearing on the City's request for a temporary injunction, the court indicated a preliminary determination that the site plan presented to the Planning & Zoning Commission on February 22, 2000, and recommended on that day by the Planning & Zoning Commission for approval by the Council (the "Approved Site Plan"), had been effectively "approved" by the City of McKinney; and

WHEREAS, the details of the Approved Site Plan are reflected in a document attached to this Agreement as Exhibit "A;" and

WHEREAS, the City has issued numerous citations to J. R. Marriott, as owner of the Marriott Property, alleging violations of the City's Zoning Ordinances; and

WHEREAS, J. R. Marriott appealed the determination of the City's Chief Building Official regarding the alleged violations of the City's Zoning Ordinance to the City of McKinney Zoning Board of Adjustment and the City of McKinney Zoning Board of Adjustment has upheld the determination of the Chief Building Official; and

WHEREAS, Defendant J. R. Marriott filed a lawsuit appealing that decision against the City and the Board of Adjustment for the City of McKinney styled, *J. R. Marriott vs. City of McKinney, Texas and Board of Adjustment of the City of McKinney, Texas*, Case Number 296-1370-00 ("Mandamus Litigation"); and

WHEREAS, the City has appeared and answered to the charges asserted against it in the Mandamus Litigation, and has expressly denied the claims made against it; and

WHEREAS, all of the parties now desire to end the disputes in the lawsuits currently pending.

NOW, THEREFORE, it is agreed as follows:

All parties agree to sign the Agreed Final Judgment attached to this agreement as Exhibit B (the "Final Judgment"), submit the Final Judgment to the 219th District Court, and request approval by the Court of the Final Judgment. Upon entry by the Court of the Final Judgment, the Parties further agree to take the following actions:

- The City agrees that it will:

    (1) Dismiss with prejudice all currently pending citations against J. R. Marriott for failing to comply with any approved site plan at 2105 South McDonald Street; and

    (2) Dismiss with prejudice any citation against Chemical Lime, Martin Marietta, or TXI it has issued as of the date of the Final Judgment, and not issue any citation as to Chemical Lime, Martin Marietta, or TXI for any alleged violations of any site plan requirement occurring before the date of the Final Judgment; and

    (3) Treat the Approved Site Plan along with details and conditions shown in Exhibit A as the Approved Site Plan for the Marriott Property; and

(4) Upon completion of the improvements as described in Exhibit "A," issue a permanent Certificate of Occupancy for the Marriott Property; and

(5) Refrain from issuing citations for matters described in Exhibit "A" so long as the time periods for improvements in Exhibit "A" are being met.

- Defendant Marriott Brothers agrees that it will:

(1) Dismiss its suit in Cause No. 296-137-00 with prejudice; and

(2) Comply with the Approved Site Plan, including the details contained in Exhibit "A."

- Defendants TXI, Martin Marietta, and Chemical Lime agree that they will:

(1) Reasonably accommodate the effort by Marriott Brothers to comply with the Approved Site Plan, including the details contained in Exhibit "A."

All parties agree that they shall be solely responsible for paying their own attorneys' fees incurred in prosecuting and/or defending claims in the Primary Litigation, the Mandamus Litigation, and any citations issued by the City to any of the Defendants. However, Defendants TXI, Martin Marietta and Chemical Lime reserve the right to seek fees or costs from defendant Marriott Brothers. Liability to another Defendant, however, will not be grounds to seek reimbursement, indemnification, or other compensation from Plaintiff.

All parties declare that they have carefully read this Agreement, they have reviewed its terms with counsel and they agree to the terms and provisions of this Agreement for the purpose of making a full and final adjustment and resolution of the matters in dispute between the parties.

It is understood and agreed that no provision, representation, understanding, or warranty has been made by the parties hereto other than those that are expressly contained herein, and that this Agreement contains the entire agreement of the parties hereto with respect to settlement of the Primary and Mandamus Litigation, and the terms of this Agreement are contractual and not a mere

recital. It is further acknowledged and agreed that the parties rely solely on the contents of this Agreement and nothing else with respect to all matters referred to herein.

The parties agree that the Approved Site Plan and Exhibit "A" attached hereto accurately reflect the terms of the City's site plan Ordinance for the Marriott Property.

If any paragraph, provision or term of this Agreement is for any reason held unconstitutional or void by a court of competent jurisdiction, such holding shall not affect any valid portion of this Agreement.

This Agreement shall be construed according to the laws of the State of Texas. Venue for any suit arising out of this Agreement filed in state court shall be in Collin County, Texas, and venue for any suit filed in federal court shall be in the Sherman Division of the United States District Court for the Eastern District of Texas.

WITNESS MY HAND this 30th day of June, 2001.

CITY OF MCKINNEY, TEXAS

By: _____
Title: City Manager

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 30th day of ~~June~~ July, 2001.

BETTY L. COSGROVE
Notary Public, State of Texas
My Commission Expires 03-01-03

Betty Cosgrove
Notary Public in and for the State of Texas

APPROVED ONLY AS TO FORM:

_____
Robert F. Brown

ATTORNEY FOR PLAINTIFF
CITY OF MCKINNEY, TEXAS

<u>SETTLEMENT AGREEMENT</u> - Page 5 of 10

CITY 000658

WITNESS MY HAND this 6th day of June, 2001.

_____
J. R. MARRIOTT

6th SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 6th day of June, 2001.

[Notary Seal: JOYCE L. PALUCH, MY COMMISSION EXPIRES July 3, 2001]

_____
Notary Public in and for the State of Texas

WITNESS MY HAND this ___ day of June, 2001.

_____
B. O. MARRIOTT

6th SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 6th day of June, 2001.

[Notary Seal: JOYCE L. PALUCH, MY COMMISSION EXPIRES July 3, 2001]

_____
Notary Public in and for the State of Texas

WITNESS MY HAND this 6th day of June, 2001.

MARRIOTT BROTHERS, INC.

By: _____
Title: PRES

6th SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 6th day of June, 2001.

[Notary Seal: JOYCE L. PALUCH, MY COMMISSION EXPIRES July 3, 2001]

_____
Notary Public in and for the State of Texas

**APPROVED ONLY AS TO FORM:**

_____
Richard Abernathy

**ATTORNEY FOR DEFENDANTS J. R. MARRIOTT, B. O. MARRIOTT, AND MARRIOTT BROTHERS, INC.**

WITNESS MY HAND this 11 day of ~~June~~ July 2001.

CHEMICAL LIME, LTD.<br>
BY: CLOW, Inc., General Partner<br>
By: *James Lee* (signature)<br>
Title: Sr. V.P.

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 11 day of ~~June~~ July, 2001.

[Notary seal: KITTY L. BOOKOUT — MY COMMISSION EXPIRES December 21, 2004]

*Kitty L. Bookout* (signature)
Notary Public in and for the State of Texas

**APPROVED ONLY AS TO FORM:**

*Joe Tolbert* (signature)
Joe Tolbert

**ATTORNEY FOR DEFENDANT
CHEMICAL LIME, LTD.**

WITNESS MY HAND this 26th day of ~~June~~ July, 2001.

                                        MARTIN MARIETTA MATERIALS SOUTHWEST, LTD.

                                        By: *[signature]*
                                        Title: **PRESIDENT**

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this 26th day of ~~June~~ July, 2001.

                                        *M. L. Champion*
                                        Notary Public in and for the State of Texas

**APPROVED ONLY AS TO FORM:**

HAYNES AND BOONE, L.L.P.

[Notary seal: M.L. CHAMPION, NOTARY PUBLIC, State of Texas, Comm. Exp. 10-15-2001]

901 Main Street
3100 Bank of America Plaza
Dallas, Texas
Telephone:  (214) 651-5000
Telecopier:  (214) 651-5940

Richard D. Anigian
State Bar No. 01264700

By:_____
      Richard D. Anigian

**ATTORNEYS FOR DEFENDANT
MARTIN MARIETTA MATERIALS
SOUTHWEST, LTD.**

WITNESS MY HAND this ___ day of June, 2001.

TXI OPERATIONS, L.P.

By: *[signature]*
Title: *V. P. Concrete*

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, on this _____ day of June, 2001.

_____
Notary Public in and for the State of Texas

**APPROVED ONLY AS TO FORM:**

JENKENS & GILCHRIST, P.C.

1445 Ross Avenue, Suite 3200
Dallas, Texas 75202-2799
Telephone:   (214) 855-4500
Telecopier:  (214) 855-4300

David Swanson
State Bar No. 19554625

Timothy J. Goodwin
State Bar No. 00792539

By:_____
    Timothy J. Goodwin

**ATTORNEYS FOR TXI OPERATIONS, L.P.**

G:\WP51\Ron\Marriott\Final settlement agreement3.wpd

SETTLEMENT AGREEMENT - Page 9 of 10

CITY 000662

Exhibit "A"

# DETAILS OF THE P&Z - "APPROVED" SITE PLAN

Paving: The site plan shall depict all areas to be in one of four categories: (1) structures; (2) irrigated landscaping; (3) asphalt or concrete pavement; (4) materials stockpiles. Only vehicles designed for loading or unloading stockpiled material will operate off of paved surfaces. The materials stockpiles are not precisely delineated; they shall be physically defined on the site plan drawing.

- **A revised site plan clearly defining the stockpile dimensions shall be submitted to the Planning Department for review and approval no later than 75 days after entry of the final judgment.**

Parking: The site plan provides for 33 standard parking spaces, and 24 double-sized truck parking spaces, for an equivalent of 81 spaces. A minimum of 71 spaces are required under the ordinances.

- Grading and drainage plans shall be submitted to the City Engineer no later than 75 days after entry of the final judgment.

- The required paving and parking shall be completed within 135 days of approval by staff of the plans and specifications.

Fire Lanes: The site plan requires the dedication of the fire lanes by an amended plat filed with the County Clerk, and the provision of adequate fire hydrants and water supply.

- **The amended plat dedicating the fire lanes must be filed with the City within 75 days of the entry of the final judgment. The City will be responsible for filing the amended plat with the County.**

- **The plans for locations of the fire hydrants must be submitted to the Fire Marshall for approval no later than 30 days after the entry of the final judgment.**

Access: The site plan requires the installation of an acceleration lane for southbound traffic on Highway 5, a deceleration lane for incoming traffic, and a left turn lane for incoming traffic from the North. Owner shall fund all required improvements.

- Owner will provide to TxDOT and the City of McKinney completed plans for the additional lanes on Highway 5 no later than 75 days after the date of the entry of the final judgment. After approval by TxDOT, Owner will construct and complete the access improvements within a reasonable time frame to be established by TxDOT.

Landscaping and screening:
: The site plan provides for a tree line along Highway 5 which is already in place, and an 8-foot berm along the southern border of the site adjacent to the mobile home park. The plan requires the applicant to establish ground cover of appropriate appearance sufficient to prevent erosion on both sides of the berm. In addition, screening requirements must be met prior to the issuance of a certificate of occupancy. Section 41-105(3)(c) of the Comprehensive Zoning Ordinance requires that all outdoor storage of materials be screened from view from the street, and may not be stacked higher than one foot below the top of the screening fence. Section 41-105(2)(c) provides that openings in the screening fence shall be equipped with gates equal in height and screening to the rest of the fence. For safety purposes, the gate should be far enough from the street to allow a 18-wheel tractor-trailer combination to pull up to a closed gate and completely clear the right-of-way.

- **The ground cover shall be established on both sides of the berm by 75 days after entry of the final judgment. Irrigation shall be sufficient to establish and maintain the ground cover. Should ground cover not requiring permanent irrigation be used, temporary irrigation maintained for a sufficient time to establish the ground cover may be used.**

- **Dead trees that are part of the landscaping plan along Highway 5 shall be replaced with live trees by 75 days after entry of the final judgment.**

- **The final landscape plan, including irrigation, must be submitted to the City Planner no later than 75 days after the entry of the final judgment.**

- **The existing fence located along the north and west boundaries of the property, when landscaped in accordance with the landscape plan, shall satisfy the perimeter screening requirement (the "Required Screening"). The Required Screening may be supplemented with interior screening devices (including, but not limited to, fencing of compatible materials, landscaping and berms) in such locations and utilizing such materials as the landowner may determine in order to further screen the outdoor storage of materials from view of the adjacent street.**

- **Installation of gates shall be completed no later than 135 days after approval by staff of the plans and specifications.**

Utilities: The permanent improvements must be serviced by gravity sanitary sewer facilities.

- **Utility construction plans must be submitted to the City Engineer within**

05/14/01 MON 11:20 [TX/RX NO 5873]
CITY 000664

> 75 days after entry of the final judgment.

- The sanitary sewer facility shall be installed no later than 135 days after approval by staff of the plans and specifications.

Garbage Container:

The owner shall provide a garbage container on site, subject to the screening requirements of Section 41-015(3)(d).

- The garbage container shall be on site, and approval from the Sanitation Coordinator requested, no later than 60 days after entry of the final judgment.

Concrete Rubble:

The piles of concrete rubble on the site are not approved stockpiles on the site plan. They shall be removed from the site. The approved process for removing the material is that it will be crushed into a "marketable base material" approximately ½ - ¾-inch in size. The crushing operation will be set up at least 400 feet from any property line, and shall be, to the extent possible, screened from the adjacent residents on the south by the existing screening berm, and by the resulting piles of crushed material.

- The crushing operation shall be completed within 120 days of the entry of the judgment. The marketable base material will be either used on site or removed from the site no later than 365 days after completion of the crushing, unless a new site plan is approved by the City Council allowing the marketable base materials storage use on the property.

Interim Use: So long as Owner meets the requirements of this timetable and checklist, continued use of the property is permitted.

Other requirements:

Owner shall be responsible for compliance with all other standards, requirements, permits, and fees for development otherwise applicable. Omission of any such requirement from this checklist does not constitute exemption from any such requirement.

G:\WP51\Ron\Marriott\Marriott-site plan outline4.wpd