UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TXI Operations, LP, | |
| Plaintiff; | |
| v. | Case No. 4:20-cv-353 |
| City of McKinney, Texas, | |
| Defendant | |
| TXI Operations, LP, | |
| Plaintiff, | |
| v. | Case No. 4:20-cv-609 |
| City of McKinney, Texas, and the Board of Adjustment for the City of McKinney, Texas, | |
| Defendants. | |

CITY DEFENDANTS' RESPONSE IN PARTIAL OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND, AND ALTERNATIVELY,
CITY DEFENDANTS' MOTION FOR SEVERANCE

Defendants, City of McKinney, Texas ("City") and the Board of Adjustment for the City of

McKinney ("Board") (together, "City Defendants"), file this Partial Opposition to Plaintiff's

Motion for Leave to Amend, and alternatively, City Defendants' Motion for Severance.

## RELEVANT PROCEDURAL BACKGROUND

This case is a consolidation of two previously filed lawsuits. In the First Lawsuit (4:20-cv-353), Plaintiff brings challenges to the City's rezoning and enforcement actions relating to Plaintiff's concrete batch plant. In the Second Lawsuit (4:20-cv-609), Plaintiff challenges the City's actions taken in connection with amortizing Plaintiff's non-conforming use of its property. These two cases were consolidated on November 10, 2020.[1] After the two cases were consolidated, Plaintiff filed its First Amended Complaint.[2] Thereafter, the parties filed a Joint Motion for Entry of Consolidated Scheduling Order,[3] which the Court granted and entered the requested scheduling order.[4] In April 2021, the parties requested, and the Court granted, a stay of the case to allow for settlement negotiations between the parties.[5] After settlement negotiations failed, the Court lifted the stay and entered a new scheduling order.[6] On November 5, 2021, Plaintiff filed its Motion for Leave to File Consolidated Amended Complaint ("Motion").[7]

City Defendants oppose the Motion in part, specifically objecting to the inclusion of paragraphs 4.5.1 – 4.5.8, 5.6.3, 5.9.1, and 5.9.2, section 7(i), and Exhibit X ("Opposed Amendments") to the Consolidated Amended Complaint ("Consolidated Complaint").[8]

## ARGUMENT AND AUTHORITIES

Plaintiff's proposed Consolidated Complaint does not simply consolidate causes of action relating to the same set of facts or same dispute in the first two lawsuits. With the Opposed

---

[1]   ECF (Doc. 25), Order Granting Agreed Jt. Mot. to Consolidate.
[2]   ECF (Doc. 27), Pl.'s Am. Compl.
[3]   ECF (Doc. 34), Jt. Mot. for Entry of Consolidated Scheduling Order.
[4]   ECF (Doc. 35), Consolidated Scheduling Order.
[5]   ECF (Doc. 37), Order Granting Jt. Mot. to Stay.
[6]   ECF (Doc. 41), Am. Scheduling Order.
[7]   ECF (Doc. 42), Pl.'s Mot. for Leave to File Consolidated Am. Compl.
[8]   ECF (Doc. 43), Pl.'s Consolidated Am. Compl.

Amendments, Plaintiff brings an entirely new cause of action, which is unrelated to the existing consolidated lawsuit. Specifically, the Opposed Amendments challenge the validity of a development agreement between the City and the prior owner of the real property located at 1825 F.M. 546, McKinney, Texas ("New Property"). This new cause of action involves new facts, an unrelated real property transaction, new documents, new witnesses, and the application of different laws. In essence, Plaintiff seeks to add what amounts to a third, unrelated lawsuit to this consolidated case. Because the issues raised by the Opposed Amendments are entirely unrelated to the current dispute, the Court should either deny the Motion or, at the very least, sever the new cause of action raised in the Opposed Amendments.

1.      **Standard of review for amendment of pleadings.**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff may only amend its pleading with the opposing party's written consent or the court's leave. Whether leave to amend should be granted is within the discretion of the district court but leave is "by no means automatic."[9] In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[10]

2.      **This Court should deny the Motion because Plaintiff's addition of a new dispute will cause undue delay and prejudice to City Defendants.**

Interestingly, Plaintiff's Motion fails to address factors (1), (2), and (4) of the analysis applied to requests for leave to amend. Instead, the Motion offers only the conclusory assertion that, "There is no undue delay, bad faith, or dilatory motive present."[11] However, when considering

---

[9]    *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (denying leave to amend).
[10]   *Id.* at 139 (citations omitted).
[11]   Pl.'s Mot. for Leave to File Consolidated Am. Compl., ¶ 3.3.

those ignored factors, it becomes apparent that those factors support denying Plaintiff's Motion, at least as it relates to the Opposed Amendments.

By adding entirely new claims that are wholly unrelated to the existing lawsuit, Plaintiff will create undue delay and prejudice the City Defendants. The existing consolidated lawsuit has been pending for well over a year and the parties have conducted written discovery, exchanged voluminous documents, and designated expert witnesses. The consolidated cases involved interrelated causes of action, common facts, and shared questions of law. Plaintiff's new claims do not.

In the First Lawsuit, Plaintiff contends that the City "wrongfully" seeks to terminate the operation of a concrete batch plant at Plaintiff's real property located at 2005 S. McDonald Street, McKinney, Texas ("Property"). Specifically, Plaintiff alleges that "for more than two years the City has engaged in multiple illegal actions that singled out and targeted TXI's lawful use of [the Property] in an effort to use the City's enforcement and land use powers to shut down TXI's operations."[12] As part of the First Lawsuit, Plaintiff challenges the City's adoption and enforcement of a noise ordinance.[13] Plaintiff also challenges whether the City properly rezoned the Property.[14] Plaintiff also claims that the City breached a settlement agreement with the prior owner of the Property by rezoning the Property, enforcing its noise ordinance, and terminating Plaintiff's certificate of occupancy for structures on the Property.[15] Further, in both the First and Second Lawsuits, Plaintiff also challenges the Board's authority to amortize Plaintiff's non-conforming use of the Property and the amortization period ordered by the Board. Because of the overlapping causes of action, questions of fact, and matters of law, the First and Second Lawsuits

---

[12]   Pl.'s Am. Compl., ¶ 3.
[13]   *Id.* at ¶¶ 3, 23.
[14]   *Id.* at ¶¶ 29-33.
[15]   *Id.* at ¶¶ 44-48.

were consolidated into the current case.

In contrast, the new claims brought against the City by Plaintiff's Opposed Amendments are so unrelated to the existing consolidated case that Plaintiff has essentially brought a third lawsuit—namely, a challenge to a non-annexation Development Agreement between the City and the prior owner of the New Property.[16] In the Opposed Amendments, Plaintiff brings challenges to the validity of the Development Agreement, including arguments that the agreement does not comply with Section 212.172 of the Texas Local Government Code.[17] Notably, none of Plaintiff's challenges to the Development Agreement pertain to any of the claims in the existing consolidated lawsuit.

At no point do the issues in the existing consolidated lawsuit and the new claims intersect. The Development Agreement dispute does not involve the 2001 settlement agreement, nor does it involve the zoning, noise ordinance, or amortization issues raised in the current lawsuit. In fact, the only connection between the Property and the New Property is that Plaintiff now owns both. Because the new dispute involves entirely separate matters of fact and law, the parties must engage in additional discovery in this dispute—after already having completed substantial written discovery in the instant case—and must do so in accordance with a scheduling order that did not contemplate the addition of this entirely new "third lawsuit."

Even a cursory review of the Consolidated Complaint demonstrates that inclusion of the new claims made in the Opposed Amendments will involve new discovery and will necessarily confuse the jury regarding which documents, statutes, and ordinances are applicable to the entirely different claims relating to the separate pieces of real property. The witnesses or content of common witness testimony will also necessarily be different, as witness testimony regarding

---

[16]    Pl.'s Consolidated Am. Compl., ¶ 4.5.2.
[17]    *Id*. at ¶¶ 4.5.3-4.

the claims in the First and Second Lawsuits is wholly different from testimony regarding the challenges to the Development Agreement. Of course, this may explain Plaintiff's reasoning for including the new dispute in the instant case instead of properly filing a separate lawsuit. Specifically, the intermixing of the separate claims may serve to confuse the jury or taint the review of the Development Agreement's validity with Plaintiff's incorrect conspiracy theory that the City misused its enforcement power to deprive Plaintiff of the Property. Whether intended or not, inclusion of the new unrelated claims with the instant lawsuit will necessarily prejudice the City Defendants.

For these reasons, the Court should deny Plaintiff's Motion with regard to the Opposed Amendments.

3.     **Alternatively, if the Court grants Plaintiff leave to add the Opposed Amendments, the Court should also sever the Development Agreement claims.**

Although a party may assert as many claims as it has against an opposing party, Federal Rule of Civil Procedure 21 provides that a "court may . . . sever any claim against a party."[18] A court has broad discretion to sever claims when "different witnesses and documentary proof would be required" to prove each claim, and severance is appropriate if trying the claims together would "confuse the jury due to legal and factual differences."[19]

Here, if the Court grants Plaintiff leave to add the Opposed Amendments, City Defendants urge the Court to sever the new claims regarding the Development Agreement into a separate proceeding. "Severance may be warranted in cases where the facts present highly individualized claims and failing to sever would increase the likelihood of prejudice and the potential for jury

---

[18]    *Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*, 3:11-CV-2205-D, 2012 WL 4442368, at *1 (N.D. Tex. Sept. 26, 2012).

[19]    *Tex. Farmers Ins. Co. v. Louisiana-Pac. Corp.*, 321 F.R.D. 561, 563–64 (E.D. Tex. 2017).

confusion."[20] To determine whether a Rule 21 severance is warranted, a court also must consider

whether the claims "arise out of a series of transactions that are similar and logically related" and

present common questions of fact or law. As such, courts are to consider the following factors in

determining whether to sever claims under Rule 21:

> (1) whether the claims arise out of the same transaction or occurrence;
> (2) whether the claims present some common questions of law or fact;
> (3) whether settlement of the claims or judicial economy would be facilitated;
> (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for the separate claims.[21]

Each of these factors favor severance in the instant case. First, the dispute over the

Development Agreement does not involve the same transaction or occurrence in any way, shape,

or form. For example, some of Plaintiff's claims in the existing lawsuit involve a transaction that

occurred twenty years prior to its acquisition of the New Property. Second, there are no common

questions of law or fact because the dispute involves completely separate real property and a

challenge to the Development Agreement, which necessitated the entirely new factual allegations

in the Opposed Amendments. Third, resolution of Plaintiff's various statutory, zoning, and

ordinance claims against the City Defendants found in the existing lawsuit will in no way

facilitate resolution of the Development Agreement issues raised in the Opposed Amendments.

Fourth, severance will avoid prejudice that is likely to occur due to the very different legal

and factual issues. "Even when plaintiffs are properly joined, confusion may warrant severance of

---

[20] *UnitedHealthcare Services, Inc. v. Next Health, LLC*, 3:17-CV-00243-E, 2021 WL 4734499, at \*3 (N.D. Tex. July 2, 2021) (citing *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (court severed claims when plaintiffs, alleging a pattern of discrimination on the part of their employer, were affected by discriminatory practices in different ways, raised different claims against the employer, and worked on separate teams in separate offices), abrogated on other grounds as recognized by *Holmes v. Energy Catering Servs., L.L.C.*, 270 F. Supp.2d 882 (S.D. Tex. 2003)).

[21] *Id.* at \*1 (citing *Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*, 3:11-CV-2205-D, 2012 WL 4442368, at \*1–2 (N.D. Tex. 2012)).

their claims under Rule 21."[22] "Severance is especially appropriate if trying claims together would confuse the jury due to legal and factual differences."[23]

An illustrative analysis was provided by the Eastern District of Texas in *Delce v. Amtrak & Resco Holdings, Inc.* In *Delce*, Plaintiffs contended that they had properly joined claims involving two unrelated incidents that involved different passengers, different trains, different train crews, different law enforcement personnel and different fact witnesses. Their argument for trying the claims together was that both plaintiffs contended an identical design defect existed in both trains. The court conceded that if that had been the *only* issue, joint trial may have been appropriate. However, the court concluded that severance was appropriate because the plaintiffs also asserted negligence claims that were fact and site specific.[24] The court reasoned that, "The causes of action are not identical, and the law of different states likely will govern the respective claims."[25] Thus, the *Delce* court ruled that severance was appropriate, because a single trial of the two claims would be unwieldy and potentially confusing to the trier of fact."[26] If Plaintiff is granted leave to add the Opposed Amendments, severance would be equally as appropriate as it was in *Delce*.

Finally, as discussed above herein, different witnesses and documentary proof would be required for the separate claims. Aside from the identities of the parties, the existing lawsuit and the new claims brought in the Opposed Amendments are wholly separate. As such, different documents, statutes, and ordinances will be applicable. As discussed herein, the new claims

---

[22]   *Delce v. Amtrak & Resco Holdings, Inc.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998) (citing *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir.1983) (stating "Rule 21 explicitly provides that '[a]ny claim against a party may be severed and proceeded with separately.'")).

[23]   *Id.* (citing *Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1063 (S.D.Tex.1996); *see also*, *Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 392 (E.D.Pa.), aff'd, 639 F.2d 774 (3d Cir.1980)).

[24]   *Delce* 180 F.R.D. at 320.

[25]   *Id.*

[26]   *Id.*

challenging the validity of the Development Agreement have nothing to do with Plaintiff's challenge of the City's rezoning, enforcement of ordinances, and amortization proceedings relating to Plaintiff's concrete batch plant operations on the Property. Plaintiff's new claims will require separate testimony from those involved with the execution of the Development Agreement. In Plaintiff's own Opposed Amendments, it is apparent that witnesses will need to be called to determine the authority of the interim City Manager, Tom Muehlenbeck, to sign the Development Agreement. Documents will be needed to determine (1) the legal description of the New Property, (2) whether the purpose of the Development Agreement has been frustrated, and (3) whether the terms of the Development Agreement are "unreasonable," "egregious," or in violation of Texas statutory authority. None of these documents and none of this witness testimony has any relation to the claims brought by Plaintiff in the existing consolidated lawsuit. Entirely separate witnesses and documents will be required for Plaintiff to prove those claims.

For these reasons, each factor used to determine whether to sever claims under Rule 21 supports severance of the new claims alleged in the Opposed Amendments. As such, the new claims should not be addressed in this lawsuit and should be severed if Plaintiff is given leave to make such claims.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully ask this Court to deny Plaintiff's Motion, or in the alternative, sever the claims pertaining to the Development Agreement. City Defendants also request any other and further relief to which they may be justly entitled.

Respectfully submitted,

By: /s/ *Christopher A. Klement*

DARRELL G-M NOGA
Texas Bar No. 00785326
darrell@brownfoxlaw.com
CHRISTOPHER A. KLEMENT
Texas Bar No. 24090212
chris@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone:  (214) 327-5000
Facsimile:   (214) 327-5001

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On November 19, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

By:  /s/ *Christopher A. Klement*

CHRISTOPHER A. KLEMENT